IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO **08-23323**

FILED BY _____ D.C

08 DEC -1 PM 4:15

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

RALPH TORNES,             )  **CIV-KING**    **MAGISTRATE**
                                 )              **BANDSTRA**

     Plaintiff,        )     CIVIL ACTION
                                 )

v.                           )

BANK OF AMERICA BANK, N.A. )
                                 )

     Defendant.       )

## CLASS ACTION COMPLAINT

Plaintiff Ralph Tornes, by and through his attorneys of record, file this, his Complaint on behalf of himself and all persons initially similarly situated within the United States and also on behalf of the General Public of the State of Florida. This Complaint is based upon the current information and belief of the Plaintiff, who hereby alleges as follows:

## PARTIES

1.    Plaintiff Ralph Tornes is and has been at all times material to the allegations in this Complaint a resident of Miami-Dade County in the State of Florida, and is otherwise *sui generis*.

2.    The Currently Unnamed Plaintiffs are those individuals that have been harmed, along with Plaintiff Ralph Tornes, by Defendant Bank of America's ("the Bank") acts and practices, specifically those acts and practices related to the Bank's abuse of contract rights and its unfair, deceptive, unconscionable, bad faith, and usurious assessment and collection of excessive overdraft charges and account fees through: the collective grouping over two or more days of valid non-overdrafting transactions with overdrafting transactions, that are held back and

CASE NO. _____

systematically processed in one batch that is designed to create multiple overdrafts that would not have otherwise transpired, and thereby create multiple overdraft fees that would not otherwise exist; the authorization of additional customer overdrafting transactions when the Bank has actual knowledge an account is overdrawn so that the additional transactions ensure more overdraft fees for the Bank; the active promotion and inducement of customers to abandon paper checks and check registers in favor of a completely electronic and debit card bank/merchant-customer interface; the deliberate frustration of customer attempts to receive accurate account balance information through this promoted bank/merchant-customer interface; the lure of customers into opening "free" checking accounts that are in no way "free"; the *de facto* extensions of credit at usurious rates for the privilege; and the misleading *de facto* conversion of debit cards into credit cards at usurious rates for the privilege, thus escaping any of the customer protections of the Federal Truth in Lending Act. It is anticipated that hundreds of thousands of potential members of the Class of Currently Unnamed Plaintiffs will be revealed through the discovery process.

3.      Defendant Bank of America Bank, N.A., and its related entities consist of one of the largest banking institutions in the country. Bank of America provides banking services to millions of customers, including Plaintiff.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1332(d)(2), this Court has jurisdiction over the claims brought by the Plaintiffs for the following reasons:

       a.   Plaintiff is a resident of and citizen of the State of Florida.

2

CASE NO. _____

b. Bank of America Bank, N.A. is a national bank organized pursuant to the National Bank Act. Bank of America's headquarters are located in Charlotte, North Carolina and is, therefore, a citizen of the State of North Carolina.

c. In addition, the amount in controversy, upon information and belief, in this matter exceeds $5 million, exclusive of interest and costs, the jurisdictional requirement set forth at 28 U.S.C. § 1332(d)(2).

d. In determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

e. Plaintiffs anticipate hundreds of thousands of potential members of the Class of Currently Unnamed Plaintiffs will be revealed during the discovery process. There are at least 200,000 potential members of the class to represent.

f. Each member of a class of 200,000 would need to incur only one $26 insufficient funds fee as result of the alleged practices described in the Complaint for the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) to be substantially exceeded. The overdraft fees charged by Defendant typically exceed $26 and are usually $35 per transaction.

g. In addition, Plaintiffs seeks more than just compensatory damages. Plaintiffs also seek attorney's fees and injunctive relief, both of which may be considered in determining the amount in controversy.

5. For the reasons stated above, this Court has original diversity jurisdiction in this case pursuant to 28 U.S.C. § 1332(d)(2) because the aggregate claims of the putative class

CASE NO. _____

members exceed $5 million, exclusive of interest and costs, and at least one plaintiff is diverse from at least one defendant.

6.      Venue is also proper in this district pursuant to 28 U.S.C. 1391. Venue is proper in this district because Bank of America is registered to do business in the State of Florida and in fact is doing business in the State of Florida. Bank of America has sufficient minimum contacts with the State of Florida, including Miami-Dade County, Broward County and West Palm Beach County, and intentionally avails itself of the customers and markets within the State of Florida through the promotion, marketing, sale and service of checking and savings accounts in this State. This purposeful availment renders the exercise of jurisdiction by Florida courts over it and its affiliated and related entities permissible under judicially accepted notions of fair play and substantial justice. Moreover, Bank of America is subject to the general jurisdiction of this Court because it has extensive facilities and operations within Florida in Miami-Dade County, Broward County and West Palm Beach County. Bank of America is subject to the personal jurisdiction in the State of Florida. All of the transactions between Plaintiff and Defendant that give rise to this claim occurred in Miami-Dade County, Broward County, and/or West Palm Beach County. This district is one in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

7.      Bank of America is in the business of providing a variety of banking services. Bank of America advertises its services through all outlets of the media.

8.      Plaintiff relies on Bank of America to provide Plaintiff with a checking account and to safeguard monetary funds deposited thereto by Plaintiff.

4

9.     Bank of America has promoted its checking account services through promotional and marketing materials published and issued through the media and in brochures available at Bank of America's banking centers.   Bank of America also advertises its checking account services on its website.

10.     Plaintiff became aware of the plans and accounts offered by Bank of America through advertisements, and in particular, Bank of America's advertisements for "free" checking accounts.  Plaintiff has had a checking account with Bank of America for more than one year.  In opening his accounts with Bank of America, Bank of America imposed contracts and agreements upon Plaintiff, certain terms of which Bank of America breached, or, in the alternative, abused the rights conveyed by the terms of its contracts and agreements.  Plaintiff opened his account with Bank of America in summer of 2000, at the Brickell branch in Miami, Florida.

11.     Customers, including Plaintiff, reasonably rely on Bank of America to ensure that charges are posted to customers' accounts in a manner that does not injure the customers. Instead, Bank of America routinely enforces a policy whereby charges and debits are posted to customers' accounts in a date, time, and amount order it has systematically devised to maximize the number of overdraft transactions and the number of overdraft fees it can collect from customers.  The order chosen by the Bank's systems does not follow customers' actual dates and times of making the transactions.  The Bank commonly structures its customer processing so that a number of transactions are held back in a batch of transactions and debits, not all of which would create an overdraft in a particular customer's account.  These "held back transactions" are not always reflected in customers' available balance, thereby giving the customer a false impression that there is more money in his or her account than there actually is, and encouraging the customer to continue making transactions.  After holding these transactions, the Bank takes

5

CASE NO. _____

the batch and re-orders it so that the largest individual transaction amount processes first, and creates an overdraft and overdraft fee. The Bank then continues to manipulate the remaining debits in the batch and processes each one to create additional overdrafts and escalating overdraft fees. Commonly, these later processed debits would not have created an overdraft had they been processed in the order or time they were made, or, alternatively, if the Bank had processed the batch with the smallest amounts being sent through first. Instead the bank purposely puts the largest transactions through first to create its fee maximizing scheme and result.

12.     Customers, including Plaintiff, are responsible customers at the time they transact the earlier, non-overdraft creating transactions. The customer requested a good or service from a merchant. The customer tendered payment by the Bank's debit card, and the merchant in turn provided that good or service to the customer. That transaction was complete for the parties to the transaction and did not create an overdraft in the customer's account at the time it was transacted and completed. Or, a customer requested cash from the Bank's ATM network and the Bank authorized that customer to receive the cash requested. Again, the transaction was then complete between the parties and did not create an overdraft at the time it was made. Bank of America subsequently manipulates the processing of these transactions to make the customer pay an overdraft fee for a misdeed he or she was not committing at the time the transaction was completed.

13.     Customers, including Plaintiff, reasonably rely on Bank of America to provide customers with accurate balance information. The Bank actively dissuades its customers from using paper checks, and their accompanying check registers. Instead the Bank actively promotes and encourages the use of its debit cards and systems such as on-line bill paying to create a completely electronic bank/merchant-customer interface. The Bank's advertising reflects its

6

CASE NO. _____

position that customers should transact all of their business electronically, and promises customers that their lives will be happier and more efficient if they use the Bank's electronic debiting and payment means.  But in return, the Bank actively provides false or misleading balance information to these customers, including Plaintiff, that in turn deceives these customers into making additional transactions that, in turn, will generate even more overdraft fees for the Bank.  Customers are deceived in two ways.  In the first scheme, customers are shown a positive balance by the Bank at an ATM, or on the Bank's own customer access web site, or through another balance inquiry device, and the customer makes a transaction in reliance on that balance. But in reality, the balance shown does not reflect all of the transactions made by the customer because the Bank is hiding earlier transactions made by the customer in its batch pool, or had chosen not to update the balance shown to reflect all transactions outstanding.  Thus, the balance the customer relied on to complete an otherwise "good" transaction was based on a falsely positive indication of the customer's balance as shown to the customer by the Bank itself.  In the second scheme, Bank of America, with actual knowledge that a customer is overdrawn or has transacted debits it knows will create multiple overdrafts through its batch processing scheme, continues to approve additional, subsequent transactions for the customer at point of purchase devices.  Thus, Bank of America, with actual knowledge of outstanding transactions that have already created a negative balance in a customer's account, encourages the customer to incur even more overdraft charges by approving — rather than prudently declining — subsequent debit card purchases and other electronic transactions.  These schemes create more overdraft fees for the Bank and injure the customer, including Plaintiff.

14.     But even the most diligent customer keeping meticulous track of every transaction is thwarted from knowing the true status of his or her account because of the various ATM and

7

other transaction fees that are deducted from balances for the convenience of using the Bank's preferred all-electronic, paperless, customer accounts. Thus, Bank of America is penalizing even the most responsible customer, who cannot, under Bank of America's scheme, ever truly know the running balance of his account, and cannot rely on the Bank to provide an accurate balance to him or her.

15.    The effect of Bank of America's deceptive balance information and false positive transaction approvals is to encourage additional spending by customers, including Plaintiff, that thereby generates more overdraft fees for the Bank. This means that when Bank of America knows the customer actually has no money in his or her account, that Bank of America is then lending money to the customer for transactions the customer would otherwise not be able to make. Further, the Bank thereby also creates a "credit" card out of its "debit" card. These loans and credit transactions then incur substantial and usurious fees. Because Bank of America characterizes its cover of these transactions as a "convenience" and disguises their true nature as a loan, the transactions fall outside of any of the federal and state consumer protections on loan and credit transactions.

16.    The allegations of paragraphs eleven through fifteen, above, represent unfair, deceptive, and fraudulent practices that, even if the terms of the Bank's account agreement could be construed to allow them, would still be an abusive and unlawful use of its contract powers. Bank of America's account processing practices ensure that a customer's account is first emptied, and then subsequent, smaller charges result in multiple overdraft fees and consequently increased service fee revenues for Bank of America. Even if Plaintiff were given materials containing language that could possibly be interpreted to authorize or disclose Bank of America's practices as described in paragraphs eleven through fifteen above, any such notice or

8

authorization was inadequate and ineffective. Plaintiff and those similarly situated that have incurred similar charges were not sufficiently made aware of Bank of America's fraudulent, deceptive, unfair, and abusive business practices. Processing and charging a customer account in this manner, without adequate notice, is inherently deceptive, unfair, and prohibited by state and Federal law.

17.    An example of the Bank's fraudulent, deceptive and unfair business practices can be seen in Plaintiff's June 2008 transactions. See Exhibit 1. On June 20, 2008 Plaintiff had a balance of $361.68. On June 20th and 21st, Plaintiff made nine debit card and ATM transactions totaling $361.09. Yet the Bank approved two additional transactions on June 22nd and June 23rd for $5.02 and $20.00, respectively, including one from its own ATM, that it knew would overdraw Plaintiff's account and result in two $35.00 overdraft fees. Thus, the Bank loaned Plaintiff $25.02 by turning his debit card into a credit card, and created $70.00 in fees for the $25.02 loan. But the Bank further manipulated and structured the activity in the June 20th to 23rd timeframe to generate even more fees. It processed the June 20th through 23rd transactions in an order that deliberately created more fees for the bank. The result was that three transactions from June 20th and 21st for $5.55, $5.73, and $6.78, each created an additional $35.00 overdraft fee for the bank. Those three transactions were valid at the time of transaction and would not have created an overdraft but for the Bank's manipulative and deceptive scheme because Plaintiff's account had sufficient funds to cover those transactions when they were made. Thus, in the June 20th to 23rd timeframe, the Bank took from Plaintiff at least $105.00 in overdraft fees it was not entitled to because it chose to process $18.02 from three otherwise valid earlier transactions under its fee maximizing scheme. In fact, the Bank's total assessment of $175.00 in

CASE NO. _____

fees for the above time period is improper because the Bank should have prudently declined his last two transactions on June 22nd and 23rd, so that there were no overdraft fees at all.

18.     Another clear example of the Bank's deceptive and abusive practices can be seen in the July 2008 timeframe.  See Exhibit 1.  Plaintiff again incurred five overdraft charges, totaling $175.00, on July 22, 2008 for transactions he made between July 17, 2008 and July 19, 2008.  On July 17, 2008, Plaintiff's account had a balance of $248.40.  On July 18, 2008 the Bank actually processed and reflected a Bank ATM withdrawal of $100.00 and two additional debit card purchases from July 16th for $35.00, and $4.38, respectively, which resulted in an account balance of $109.02.  Not reflected by his balance for July 18th, though, was a purchase at Burger King for $4.49 the day before, that should have resulted in a balance of $104.53.  Further unreflected by the July 18th balance was the Bank's authorization of four additional debit card purchases for $25.00, $15.47, $4.77, and $3.84, and a $60.00 withdrawal from another of its own ATM's on July 18th.  One or two of these additional transactions would have overdrawn Plaintiff's account to -$4.55, meaning that the Bank authorized the one or two transactions with actual knowledge they would generate guaranteed overdraft fees for the Bank, and thereby once again transform Plaintiff's debit card into a credit card.  Despite its knowledge that Plaintiff was actually overdrawn, on July 19, 2008 the Bank approved another Plaintiff debit card purchase for $66.70.  Bank of America should not have approved these additional transactions because it knew Plaintiff was already overdrawn.[1]  Instead, the Bank held Plaintiff's debit card purchases transacted from July 17th to 19th, and its own July 18th ATM transaction in one batch, which it then processed on July 21, 2008.  The first debit it chose to process was the last actual debit

---

1.     The fact that the Bank has actual knowledge of pending debit card transactions before it chooses to process them can be seen by the first lines of Plaintiff's August on-line statement, showing his pending debit card purchases of August 11, 2008.

CASE NO. _____

transaction made by Plaintiff, because it was the largest amount for $66.70. It then processed his $60.00 ATM transaction from July 18th, and created the first overdraft. The Bank then processed each of the earlier-made smaller transactions, even though Plaintiff's account had had sufficient funds to cover these transactions when the transactions were actually made. As a result of this abusive, fraudulent and deceptive batch processing scheme, Plaintiff thereby incurred five overdraft charges for $175.00, when the Bank helped Plaintiff create the overdraft by approving later transactions it should have declined, and then mixed these later transactions with earlier valid transactions in its batch processing scheme to create as many overdraft fees as possible. Thus, the Bank turned Plaintiff's debit card into a credit card on July 18th and 19th, loaning Plaintiff $71.25 for which it charged $175.00 in fees for the "convenience."

19.   A further example of the Bank's costly convenience is seen in May 2008. See Exhibit 1. On May 20, 2008 Plaintiff had a balance of $195.89. The Bank processed three transactions on May 21, 2008:  a CitiFinancial bill payment for $256.00, and two debit card transactions from May 17, 2008 for $8.00 and $13.00. The Bank processed the CitiFinancial payment first, which overdrew Plaintiff's account, and then processed the two smaller transactions. This resulted in $105.00 in overdraft fees. The $8.00 and $13.00 transactions were made on May 17th when Plaintiff was not overdrawn. While it may very well be convenient to Plaintiff that Bank of America paid his CitiFinancial bill, the Bank could have still cleared the other two earlier transactions first and only charged Plaintiff one substantial and adequate $35.00 fee for such convenience. Instead Bank of America abused any contractual rights it might have under its non-negotiated, Defendant-biased account agreement, and wrongfully charged Plaintiff $105.00 for a loan of $81.11 for a period of twenty-four hours. Plaintiff should not have been charged the additional overdraft fees of $70.00 for the two transactions that would have cleared

CASE NO. _____

Plaintiff's account but for Bank of America's fraudulent, deceptive, unfair, and abusive business practices. Plaintiff should have been allowed to decide how much "convenience" it was willing to pay for in the course of his relationship with Bank of America.

20.     As a result of these transactions and charges, Bank of America has improperly deprived Plaintiff, and those similarly situated, of significant funds.  Plaintiff was wrongfully charged overdraft fees for numerous transactions that were valid when made, and charged overdraft fees for transactions that the Bank should have prudently declined when it had actual knowledge that approval would create an overdraft in Plaintiff's account.  Bank of America's method of processing transactions is a scheme to maximize the number of overdraft fees it can collect, unlawfully taking and using Plaintiff's property for its own gain.

## CLASS ACTION ALLEGATIONS

21.     Pursuant to Fed.R.Civ.P. 23, the Class Plaintiff brings this action both individually and on behalf of all persons similarly situated that suffered injuries as a result of Bank of America's fraudulent, deceptive, unfair, and abusive business practices as described above.  Plaintiff Ralph Tornes is not the only customer to whom Bank of America has applied its fee maximizing batch processing scheme, nor is he the only customer to whom Bank of America has effectively loaned money to at exorbitant and usurious rates of interest by transforming their "debit" transactions into "credit" transactions.   These are Bank of America's standard, undisputed practices wherever it maintains customer accounts in the United States.

22.     The Class of persons or entities described above is so numerous that joinder of all members by name in one action is impracticable.  All injuries sustained by any member of the Class arise out of the conduct of Bank of America in wrongfully debiting and manipulating the accounts of Plaintiffs and those similarly situated.

23.     Important questions of law and fact exist which are common to the entire Class and predominate over any questions that may affect individual Class Members in that Bank of America has acted on grounds generally applicable to the entire Class.  It will be shown that the cause of the fees charged to other customers, namely Bank of America's transaction processing scheme to maximize its ability to collect overdraft charges and create improper customer loan accounts, is the same for hundreds of thousands of customers identically situated to the named Plaintiff.

24.     All questions as to the actions attributable to Bank of America herein are similarly common.  A determination of liability for such conduct will also be applicable to all members of the Class.

25.     The claims of the Class representative, Plaintiff Ralph Tornes, are typical of the claims of the Class in that Plaintiff suffered damages as a result of Bank of America's fraudulent, deceptive, unfair, and abusive business practices.

26.     Plaintiff will fully and adequately represent and protect the interests of the entire Class because of the common injuries and interests of the Class Members and the singular conduct of Bank of America as to all Class Members.  Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.  Plaintiff has no interest that is contrary to or in conflict with those of the Class they seek to represent.

27.     A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  There is no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Class certification is also appropriate in this action because:

CASE NO. _____

a. Pursuant to Fed.R.Civ.P. 23(b)(1), the prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards for Bank of America under the law alleged herein.

b. And/or, in seeking injunctive relief from the Bank of America's practices alleged herein, pursuant to Fed.R.Civ.P. 23(b)(2) Bank of America's actions in wrongfully assessing overdraft fees is applicable to the Class.

c. And/or, pursuant to Fed.R.Civ.P. 23(b)(3) in seeking monetary damages the questions of law and fact at issue are common to all members of the Class predominating over individual issues, and a Class Action is the superior method of adjudicating this controversy as individual claims for small individual amounts of fees would be impractical.

**REQUEST FOR CLASS RELIEF**

**FIRST CLAIM FOR CLASS RELIEF**

**BREACH OF CONTRACT**

29.    Plaintiff incorporates by reference the allegations in Paragraphs 1-28 above as if set forth verbatim herein.

30.    Under Florida and the common law, good faith and fair dealing is an element of every contract. Every contract imposes upon each party a duty of good faith and fair dealing in its performance. Good faith in contracting is the obligation to preserve the spirit of the bargain rather than merely the letter, the adherence to substance rather than form. Both Florida and the common law call for substantial compliance with the spirit, and not the letter only, of a contract

CASE NO. _____

in its performance.  Evasion of the spirit of the bargain and abuse of a power to specify terms have been judicially recognized as examples of bad faith in the performance of contracts.

31.     Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified.  But the obligation goes further; bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, abuse of rights given by the terms, and interference with or failure to cooperate in the other party's performance.

32.     Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such a determination is implied.  Bank of America may unilaterally choose whether to impose overdraft charges by posting transactions in any order Bank of America wishes and by unilaterally deciding whether to honor requested transactions when customers have insufficient funds.   Because the occurrence, amount, and frequency of overdraft charges are set unilaterally by Bank of America, Bank of America has an obligation to impose overdraft charges on customers' bank accounts in good faith.  Bank of America has breached this obligation by intentionally delaying and rearranging the posting of transactions to accounts in order to maximize the amount of over draft charges.  For example, Bank of America has the ability to post debit card transactions to checking accounts immediately because Bank of America is made aware of debit card transactions as they occur due to the electronic nature of debit card transactions.  Instead of posting debit card transactions to accounts immediately, however, or even posting debit card

CASE NO. _____

transactions in chronological order, Bank of America chooses to delay the posting of these transactions for many days and posts these transactions in an order that maximizes the imposition of overdraft charges.

33.    In breach of its duties of good faith and fair dealing, Bank of America has assessed excessive, unreasonable and unnecessary overdraft charges against Plaintiff, Class Members, and the General Public.  These overdraft charges are not set in accordance with the reasonable expectations of the parties.

34.    Plaintiff seeks a judicial declaration determining that the charges actually set by Bank of America are not consonant with Bank of America's duties of good faith and fair dealing. Plaintiff also seeks compensatory damages resulting from Bank of America's breach of its duties of good faith and fair dealing.  Plaintiff further seeks all relief allowed or deemed appropriate by this Court, including attorney fees and costs, for Bank of America's bad faith connected with and arising out of Bank of America's conduct in holding back and rearranging transactions in order to maximize overdraft charges.

## SECOND CLAIM FOR CLASS RELIEF

### ABUSE OF RIGHTS

35.    Plaintiff incorporates by reference the allegations in Paragraphs 1-28 above as if set forth verbatim herein.

36.    Bank of America inequitably uses and abuses the powers granted to it by its non-negotiated customer agreements.

37.    By engaging in a scheme to stretch the parameters of its account agreements to manipulate transaction processing to maximize profits, Bank of America is unreasonably exercising its contract rights to the harm of Plaintiff and others similarly situation.  The abusive

CASE NO. _____

exercise of this power thus harms Plaintiff by wrongfully depriving him of his property by creating more overdraft fees than are necessary.

38.   Bank of America is abusively exercising this contract power to maximize its profits rather than to efficiently manage its processing operations or provide convenience to Plaintiff or those similarly situated.

39.   Plaintiff seeks a judicial declaration that Bank of America is abusing the powers conferred on it by contract, and seeks compensatory damages flowing from the abuse of that power.  Plaintiff further seeks all relief allowed or deemed appropriate by this Court for Bank of America's abuse of rights connected with and arising out of Bank of America's conduct in chronologically rearranging transactions in order to maximize overdraft charges.

## THIRD CLAIM FOR CLASS RELIEF

## UNCONSCIONABILITY

40.   Plaintiff incorporates by reference the allegations in Paragraphs 1-28 above as if set forth verbatim herein.

41.   Even if Bank of America's customer debit processing and overdraft fee assessment procedures are authorized by the letter of its customer agreements and state law, in practice Bank of America's implementation of those procedures is unconscionable.  Neither the law nor any customer agreement can be construed to allow factors the agreement is "silent" on to authorize abuse of a customer and his property.

42.   Bank of America's "Deposit Agreement and Disclosures for Personal Accounts" provides,

> We may determine in our discretion the order of processing and posting deposits, fees, charges, checks, debits and other items to your account.  We may credit, accept, pay, certify or return deposits, fees, charges, checks, debits and

other items arriving to your account on the same day in any order at our option. . .

> We may establish categories for fees, charges, checks, debits and other items and designate a posting priority for each category. A category may include more than one type of item. . . . Within each category we process and post items in any order we choose. We may use the same or different orders for different categories. We may change categories and orders within categories at any time without notice.
> When you do not have enough available funds in your account to cover all of the items presented that day, some posting orders may result in more insufficient funds items and more fees than other orders. We may choose our processing and posting orders regardless of whether additional fees may result. . .

See Exhibit 2.[2] Considering the great business acumen and experience of Bank of America when compared to Plaintiff and those similarly situated, the great disparity in the relative bargaining power, the inconspicuousness and incomprehensibility of the contract language, the oppressiveness of the terms, and the absence of a meaningful choice of competing banking institutions, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and therefore unenforceable as a matter of law.

43.     Here, Plaintiff and those similarly situated are customers, not bankers. Bank of America does not negotiate these terms with any customers. Plaintiff, like most customers, was not in a position to bargain for more favorable contract terms, nor was he able to experience the results of Bank of America's practices before enrolling in Bank of America's services. With regard to the "surprise factor" of unconscionability, Plaintiff and those similarly situated were not made aware of the effect of Bank of America's practices at the time the contract was entered into. The Bank's agreements are thus procedurally unconscionable.

---

[2] The Deposit Agreement and Disclosure attached as Exhibit 2 is a sample agreement. Plaintiff is unsure whether Exhibit 2 is the same agreement received when the account at issue was opened.

CASE NO. _____

44.    Plaintiff requests an inquiry into the setting, purpose, and effect of these terms, including the basis and justification for delaying and chronologically rearranging transactions. The banking industry should not be immune from scrutiny.  The grossly excessive market price, the miniscule cost of the goods or services to Bank of America, the slight inconvenience imposed on Bank of America in extending credit, and the slight value of the overdraft service all demonstrate that Bank of America's method of maximizing overdraft charges is substantively unconscionable.  Combined with the absence of meaningful choice, the lack of sophistication of customers, and Bank of America's deceptive practices in rearranging and delaying transactions, the Court should strike down Bank of America's overdraft practices as unconscionable.

45.    Bank of America has structured totally one-sided transactions.  The absence of equality of bargaining power, open negotiation, full disclosure, and a contract which fairly sets out the rights and duties of each party demonstrate that the transaction lacks those checks and balances which would inhibit the charging of unconscionable fees.  Each overdraft charge derived from Bank of America's rearrangement of transactions should be rescinded and refunded to Plaintiffs and those similarly situated.

## FOURTH CLAIM FOR CLASS RELIEF

## TROVER AND CONVERSION

46.    Plaintiff incorporates by reference the allegations in Paragraphs 1-28 above as if set forth verbatim herein.

47.    Bank of America has, without adequate authorization, assumed and exercised the right of ownership over personal property belonging to Plaintiff and those similarly situated, in hostility to the rights of Plaintiff and those similarly situated, as described above.  Plaintiff and those similarly situated had title to funds in their specific and readily identifiable checking

19

accounts and Bank of America wrongfully possessed said funds through its abusive, unfair, deceptive, and improper practices.   These improperly assessed overdraft charges represent specific amounts of money from specified identifiable funds for use for specific purposes and represent conversion by the Bank of America of the Plaintiff's property.

48.   As a direct and proximate result of the levy of improper overdraft charges and improper account transfers by Bank of America, Plaintiff, Class Members and the General Public have suffered damages.   The damages proximately and directly resulting from such conduct, including actual, nominal, general and punitive damages should be taxed to Bank of America.

## FIFTH CLAIM FOR CLASS RELIEF

### UNJUST ENRICHMENT

49.   Plaintiff incorporates by reference the allegations of Paragraphs 1-28 above as if set forth verbatim herein.

50.   A party cannot induce, accept or encourage another to furnish or render something of value to such party and avoid payment for the value received.   As a result of the conduct described above — including the reordering of transactions and providing electronic balance and payment approval information that falsely indicates positive balances — Bank of America has been and will be unjustly enriched at the expense of the Plaintiff, Class Members and the General Public.   Specifically, Bank of America has been unjustly enriched by encouraging and allowing Plaintiff and its customers to continue to incur debits and charges when in reality there would be a negative balance, and then rearranging those transactions in order to maximize the number and amount of overdraft charges it can charge.

51.   In providing false balance information and then structuring transactions to create fees paid from Plaintiffs' property, Bank of America benefitted from the fees/property Plaintiff's

conferred on Bank of America as a result of its transactional management sacheme.  Bank of America appreciated this benefit because the Plaintiffs' property added to Bank of America's revenues and profits.  The retention of this benefit at the Plaintiff's expense, without providing Plaintiff's value for the benefit received is inequitable.  Thus Bank of America has been unjustly enriched.

52.     Bank of America, the benefitted party, equitably ought to compensate Plaintiff and those similarly situated for all excessive overdraft charges given the fact that no legal contract authorized Bank of America's practices.  Bank of America has received and is holding funds belonging to Plaintiff and those similarly situated, which in equity and good conscience Bank of America should not be permitted to keep but should be required to refund to Plaintiff and those similarly situated.

## SIXTH CLAIM FOR CLASS RELIEF

### USURY

53.     Plaintiff incorporates by reference the allegations of Paragraphs 1-28 above as if set forth verbatim herein.

54.     Pursuant to *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), the National Bank Act controls usury claims against national banks and preempts state law claims of usury.[3]  539 U.S. at 11.  Specifically, claims for usury against a national bank are governed exclusively by 12 U.S.C. §§ 85, 86 (2008).  Section 85 provides that: "Any association may take, receive, reserve, and charge on any loan . . . or other evidences of debt, interest at the rate allowed by the laws of the State . . . where the bank is located," or the laws of the State where a

---

3. *Beneficial* thus abrogates a central finding in *Video Trax, Inc. v. Nationsbank, N.A.*, 205 F.3d 1358 (11th Cir. 1998), where the Southern District of Florida found that usury claims against a national bank were controlled by Florida law. *Video Trax, Inc.* is further distinguished by its limited focus on paper check transactions.

21

bank conducts business.  However, state law is only used and referred to under § 85 to determine the maximum rate allowed.  539 U.S. at 10.  State usury law plays no other part in defining what usury is or in determining when usury occurs.  *See id.*

55.     Bank of America knowingly and systematically advances monies to Plaintiff, and others similarly situated, for use in his deposit account and knowingly charges and collects fees for these advances.  These advances are made through the customer's use of a debit card, and other electronic means.  Bank of America routinely manipulates these advances in order to maximize the amount of fees it may collect from Plaintiff and its customers.

56.     Bank of America's advancement of monies to Plaintiff and others similarly situated are *de facto* loan and credit transactions, made without a specific loan agreement for such advances. The fees and interest then charged to Plaintiff and others similarly situated for such advances are egregiously high, usurious, and unreasonable.

57.     By creating a system of advancing funds that are *de facto* loans rather than *de jure* loans, Bank of America deceptively avoids any of the customer protections of the Truth in Lending Act or any applicable State law customer loan protections.  Bank of America has created a system whereby it lends money to customers without being answerable for its practices.

58.     The usurious transactions at issue all occurred less than two years from the date of this action.

59.     Pursuant to Florida Statute § 687.01 (2008), where there is no specific contract for a loan, the rate of interest for loans and advances of money is set pursuant to Florida Statute § 55.03, and is set by the Chief Financial Officer of the State.  The current maximum allowable rate under § 55.03 is 11% per annum.

60.    Bank of America's fees for advancing money to Plaintiff and others similarly situated routinely exceeds 11%.  By advancing Plaintiff $71.25 on July 21, 2008 — for debits that should not have created overdraft fees — and then charging Plaintiff $175.00 for that advance, Bank of America effectively collected more than a 140% return on its advanced funds. See Exhibit 1.  The Bank received the return within three days from the advance when Plaintiff's direct deposit reimbursed the Bank.  By advancing Plaintiff $24.43 on June 23, 2008, and then charging Plaintiff $175.00 for that advance, Bank of America effectively collected more than a 600% return on its advanced funds.  See Exhibit 1.  The Bank received the return within two days from the advance when Plaintiff's direct deposit reimbursed the Bank.  Such egregiously high rates of return and interest are routinely charged by Bank of America for advances of money to Plaintiff and its similarly situated customers on their deposit accounts.

61.    Even if the interest rate allowed by Florida, North Carolina, or Federal law is found to be higher than 11%, no usury provision allows such high rates of return/interest in the absence of a specific loan agreement specifying and clearly identifying the terms of the loan and the interest rate to be charged.

62.    Pursuant to 12 U.S.C. § 86, Plaintiff seeks to recover twice the amount of the usurious interest he has paid.  Plaintiff further seeks all relief allowed or deemed appropriate by this Court for Bank of America's usurious and unauthorized fees in connection with its abusive money advancement practices and its conduct in rearranging transactions batches in order to maximize overdraft charges.

**WHEREFORE,** Plaintiff Ralph Tornes and the Class Plaintiffs pray:

CASE NO. _____

(1)     For certification of this matter as a class action lawsuit to proceed on behalf of the

        class of all Currently Unnamed Plaintiffs as described herein after suitable

        discovery has been completed;

(2)     For injunctive relief as set forth herein;

(3)     For restitution;

(4)     For an award of such damages as are authorized by law;

(5)     For an award of all reasonable costs and attorneys' fees incurred by Plaintiff;

(6)     For trial by jury of all matters; and

(7)     For such other and further relief as the Court may deem just and equitable.

DATED this 1st day of December, 2008.

                              Respectfully Submitted,

                              ALTERS BOLDT BROWN RASH
                              & CULMO, P.A.
                              Jeremy W. Alters, Esquire
                              Kimberly L. Boldt, Esquire
                              *Miami Office:*
                              4141 N.E. 2nd Avenue
                              Miami, Florida 33137
                              Tel: (305) 571-8550
                              Fax: (305) 571-8558

                              *Boca Raton Office:*
                              21 Southeast 5th Street
                              Suite 200
                              Boca Raton, Florida 33432
                              Telephone: (561) 955-0045
                              Facsimile: (561) 955-1978

                              _____
                              Jeremy W. Alters
                              Florida Bar No. 0411790

                              _____
                              Kimberly L. Boldt
                              Florida Bar No. 957399

24

# EXHIBIT 1

Bank of America | Online Banking | Account Details | Transaction Register Print          Page 1 of 3


**Bank of America**                                    Online Banking

## MyAccess Checking - 4084: Account Activity

### Balance Summary

-$133.26
Available Balance
as of 08/12/2008

View:   Today(August 12, 2008)

### All transactions:

| Date ↓ | Record | Type | Status | Amount | Balance |
|---|---|---|---|---|---|
| Pending | CHECKCARD FLORIDA POWE R & L 800-226-3545 ... | ⊖ | [P] | -$1.01 | -$133.26 |
| Pending | CHECKCARD PRONTOWASH SOUTH MIAMI FL ON 0... | ⊖ | [P] | -$29.00 | -$132.25 |
| Pending | CHECKCARD FLORIDA POWE R & L 800-226-3545 ... | ⊖ | [P] | -$334.81 | -$103.25 |
| 08/11/2008 | CHECKCARD 0807 AMERIKA GAS 54/N.E 2ND MIAM... | 💳 | Ⓒ | -$12.13 | $231.56 |
| 08/11/2008 | MCDONALD'S F11 08/09 #000872295 PURCHASE... | 💳 | Ⓒ | -$14.23 | $243.69 |
| 08/11/2008 | CVS 5924 8765 08/09 #000358025 PURCHASE... | 💳 | Ⓒ | -$16.04 | $257.92 |
| 08/11/2008 | PUBLIX 08/09 #00000173 3 PURCHASE 9105 S D... | 💳 | Ⓒ | -$16.71 | $273.96 |
| 08/11/2008 | CVS 5924 8765 08/09 #000339160 PURCHASE... | 💳 | Ⓒ | -$23.55 | $290.67 |
| 08/11/2008 | CHECKCARD 0808 CHEESEB RGR IN PRDS5003 S M... | 💳 | Ⓒ | -$44.00 | $314.22 |
| 08/11/2008 | CHECKCARD 0808 KARMA CARWASH AND CAFE MI... | 💳 | Ⓒ | -$100.00 | $358.22 |
| 08/11/2008 | PUBLIX 08/09 #00000459 3 WITHDRWL 1500 S D... | ⏺📇 | Ⓒ | -$100.00 | $458.22 |
| 08/08/2008 | CHECKCARD 0807 BELLANT E'S PIZZA&PASTA MIA... | 💳 | Ⓒ | -$16.08 | $558.22 |
| 08/08/2008 | SOU ROSS STORE 08/07 #000224899 PURCHASE... | 💳 | Ⓒ | -$35.00 | $574.30 |
| 08/08/2008 | TARGET T1039 M 08/07 #000578885 PURCHASE... | 💳 | Ⓒ | -$36.36 | $609.30 |
| 08/08/2008 | QUICK TIRES 08/08 #000 803024 PURCHASE QUI... | 💳 | Ⓒ | -$39.89 | $645.66 |
| 08/07/2008 | 18545460 08/07 #000594 469 PURCHASE GROVE ... | 💳 | Ⓒ | -$3.75 | $685.55 |
| 08/07/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | ⊖ | Ⓒ | -$460.50 | $689.30 |
| 08/07/2008 | ALTERS BOLDT BRO DES:P AYROLL ID:279090000... | ⏺📇 | Ⓒ | $1,149.04 | $1,149.80 |
| 08/04/2008 | WESTAR - 97/40 08/02 #000958624 PURCHASE... | 💳 | Ⓒ | -$20.00 | $0.76 |



**Bank of America**                                        Online Banking

## MyAccess Checking - 4084: Account Activity

### Balance Summary

-$133.26
Available Balance
as of 08/12/2008

View:   July 2008

**All transactions:**

| Date ↓ | Record | Type | Status | Amount | Balance |
|---|---|---|---|---|---|
| 07/31/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | C | -$200.00 | $192.15 |
| 07/31/2008 | FL TLR transfer Bankin g Ctr BRICKELL #00 | | C | $350.00 | $392.15 |
| 07/30/2008 | CitiFinancial Bill Payment | | C | -$128.00 | $42.15 |
| 07/30/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | C | -$60.00 | $170.15 |
| 07/29/2008 | PayPal DES:PPAL EPAY ID:82805327 INDN: 6... | | C | -$30.00 | $230.15 |
| 07/28/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | C | -$60.00 | $260.15 |
| 07/25/2008 | Florida Power and Light Bill Payment | | C | -$100.00 | $340.15 |
| 07/25/2008 | Ameri-Credit Bill Payment | | C | -$367.00 | $440.15 |
| 07/25/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | C | -$70.00 | $807.15 |
| 07/24/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | C | -$60.00 | $877.15 |
| 07/24/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | C | -$140.00 | $937.15 |
| 07/24/2008 | ALTERS BOLDT BRO DES:P AYROLL ID:277921000... | | C | $1,148.40 | $1,077.15 |

Statement Period as of 07/24/2008

| Date | Record | Type | Status | Amount | Balance |
|---|---|---|---|---|---|
| 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | C | -$35.00 | -$71.25 |
| 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | C | -$35.00 | -$36.25 |
| 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | C | -$35.00 | -$1.25 |
| 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | C | -$35.00 | $33.75 |
| 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | C | -$35.00 | $68.75 |
| 07/22/2008 | Counter Credit | | C | $175.00 | $103.75 |

Bank of America | Online Banking | Account Details | Transaction Register Print

| Date | Description | | | Amount | Balance |
|------|-------------|---|---|--------|---------|
| 07/21/2008 | RED BIRD CITGO 07/18 #000119523 PURCHASE... | | C | -$3.84 | -$71.25 |
| 07/21/2008 | CHECKCARD 0717 BURGER KING #29 Q07 MIAMI ... | | C | -$4.49 | -$67.41 |
| 07/21/2008 | CHECKCARD 0718 17TH & DIXIE CITGO Q39 MIA... | | C | -$4.77 | -$62.92 |
| 07/21/2008 | CHECKCARD 0718 WENDYS #9720 Q25 MIAMI FL ... | | C | -$15.47 | -$58.15 |
| 07/21/2008 | WESTAR - 97/40 07/18 #000908127 PURCHASE... | | C | -$25.00 | -$42.68 |
| 07/21/2008 | BKOFAMERICA ATM 07/18 #000007524 WITHDRWL... | | C | -$60.00 | -$17.68 |
| 07/21/2008 | CHECHOS PUB BI 07/19 #000803625 PURCHASE... | | C | -$66.70 | $42.32 |
| 07/18/2008 | CHECKCARD 0716 CHE PIBE MIAMI FL 24088... | | C | -$4.38 | $109.02 |
| 07/18/2008 | CHECKCARD 0716 BERRIES MIAMI FL 2441290819... | | C | -$35.00 | $113.40 |
| 07/18/2008 | BKOFAMERICA ATM 07/18 #000001962 WITHDRWL... | | C | -$100.00 | $148.40 |
| 07/17/2008 | FL TLR transfer Bankin g Ctr BRICKELL #00 | | C | $200.00 | $248.40 |
| 07/16/2008 | CHECKCARD 0715 PIZZA FIOLE MIAMI FL 2471... | | C | -$6.33 | $48.40 |
| 07/16/2008 | CHECKCARD 0714 CHEESEC AKE DADELAND MIAMI ... | | C | -$8.29 | $54.73 |
| 07/15/2008 | CHECKCARD 0714 SHELL OIL 20958509919 MIA... | | C | -$8.00 | $63.02 |
| 07/14/2008 | CHECKCARD 0712 GELATER IA PARMALAT MIAMI F... | | C | -$3.69 | $71.02 |
| 07/14/2008 | CHECKCARD 0710 BURGER KING #60 Q07 NORTH ... | | C | -$4.49 | $74.71 |
| 07/14/2008 | CHECKCARD 0710 POLLO TROPICAL00000042 MI... | | C | -$10.59 | $79.20 |
| 07/14/2008 | CHECKCARD 0712 BURGER KING #14 Q07 MIAMI ... | | C | -$12.81 | $89.79 |
| 07/14/2008 | WALGREEN COMPA 07/13 #000859499 PURCHASE.. | | C | -$14.06 | $102.60 |
| 07/14/2008 | CHECKCARD 0710 POLLO TROPICAL00000042 MI... | | C | -$15.72 | $116.66 |
| 07/14/2008 | CHECKCARD 0712 LOVEN OVENS, INC MIAMI FL... | | C | -$24.53 | $132.38 |
| 07/14/2008 | PANTRY GOURMET 07/11 #000498362 PURCHASE... | | C | -$28.88 | $156.91 |
| 07/14/2008 | EXXONMOBIL POS 07/12 #000696930 PURCHASE.. | | C | -$30.03 | $185.79 |
| 07/14/2008 | TROPICAL SUPER 07/11 #000221628 PURCHASE... | | C | -$33.43 | $215.82 |
| 07/14/2008 | PUBLIX 07/13 #00000970 7 WITHDRWL 1500 S D... | | C | -$40.00 | $249.25 |
| 07/11/2008 | MOE S SUNOCO 07/11 #000165481 PURCHASE... | | C | -$40.00 | $289.25 |
| 07/11/2008 | PUBLIX 07/10 #00000189 0 PURCHASE 9105 S D... | | C | -$57.27 | $329.25 |
| 07/11/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | C | -$100.00 | $386.52 |

| 07/10/2008 | First National Bank Of Marin Bill Payment | | | -$50.00 | $486.52 |
| 07/10/2008 | BKOFAMERICA ATM 07/10 #000006129 WITHDRWL... | | | -$50.00 | $536.52 |
| 07/10/2008 | BKOFAMERICA ATM 07/10 #000007757 WITHDRWL... | | | -$70.00 | $586.52 |
| 07/10/2008 | Florida Power and Light Bill Payment | | | -$200.00 | $656.52 |

[1](includes amounts subject to any holds.)
[2](helps you plan your finances by tracking upcoming payments and deposits.)

Bank of America | Online Banking | Account Details | Transaction Register Print                    Page 1 of 3



**Bank of America**                                    Online Banking

## MyAccess Checking - 4084: Account Activity

Balance Summary

-$133.26
Available Balance
as of 08/12/2008[1]

View:   May 2008

All transactions:

| Date ↓ | Record | Type | Status | Amount | Balance |
|---|---|---|---|---|---|
| 05/30/2008 | WESTAR-97/40ST 05/30 #000697856 PURCHASE... | | C | -$54.27 | $587.10 |
| 05/30/2008 | CHECKCARD 0529 BOTTEGA GRILL MIAMI FL 2430... | | C | -$61.99 | $641.37 |
| 05/30/2008 | CHECKCARD 0529 GIL'S FRUITS & FLOWERS 30... | | C | -$68.75 | $703.36 |
| 05/29/2008 | BKOFAMERICA ATM 05/29 #000003039 WITHDRWL... | | C | -$50.00 | $772.11 |
| 05/29/2008 | WESTAR-97/40ST 05/29 #000921976 PURCHASE... | | C | -$54.27 | $822.11 |
| 05/29/2008 | Check 536: Edit Details | | C | -$134.68 | $876.38 |
| 05/29/2008 | BKOFAMERICA ATM 05/29 #000003040 WITHDRWL... | | C | -$200.00 | $1,011.06 |
| 05/29/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 05-... | | C | -$35.00 | $1,211.06 |
| 05/29/2008 | ALTERS BOLDT BRO DES:P AYROLL ID:271854000... | | C | $1,289.01 | $1,246.06 |
| 05/28/2008 | TROPICAL SUPER 05/27 #000497469 PURCHASE... | | C | -$1.79 | -$42.95 |
| 05/28/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 05-... | | C | -$35.00 | -$41.16 |
| 05/27/2008 | BIRD BOWL 05/25 #00000 4407 WITHDRWL 9275 ... | | C | -$2.00 | -$6.16 |
| 05/27/2008 | CHECKCARD 0524 BIRD BOWL MIAMI FL 24223... | | C | -$6.00 | -$4.16 |
| 05/27/2008 | WESTAR-97/40ST 05/24 #000665664 PURCHASE... | | C | -$6.54 | $3.64 |
| 05/27/2008 | CHECKCARD 0524 BIRD BOWL MIAMI FL 24223... | | C | -$10.25 | $12.38 |
| 05/27/2008 | 7-ELEVEN 05/24 #000356 918 PURCHASE 7-ELEV... | | C | -$10.40 | $22.63 |
| 05/27/2008 | CHECKCARD 0525 BIRD BOWL MIAMI FL 24223... | | C | -$12.00 | $33.03 |
| 05/27/2008 | BIRD BOWL 05/25 #00000 4407 WITHDRWL 9275 ... | | C | -$12.75 | $45.03 |
| 05/27/2008 | CHECKCARD 0523 BIRD BOWL MIAMI FL 24223... | | C | -$21.00 | $57.78 |

| Date | Description | | | Amount | Balance |
|------|-------------|---|---|--------|---------|
| 05/27/2008 | CHECKCARD 0524 MARTINI BAR MIAMI FL 24307S... | | C | -$25.00 | $76.78 |
| 05/27/2008 | PUBLIX 05/24 #00000105 2 PURCHASE 11495 BI... | | C | -$26.84 | $103.78 |
| 05/27/2008 | CHECKCARD 0524 BIRD BOWL MIAMI FL 24223... | | C | -$33.75 | $130.62 |
| 05/27/2008 | CHECKCARD 0523 BIRD BOWL MIAMI FL 24223... | | C | -$33.75 | $164.37 |
| 05/23/2008 | DADE COUNTY FC 05/23 #000002751 WITHDRWL... | | C | -$2.00 | $198.12 |
| 05/23/2008 | NNT EAGLE 2 CO 05/23 #000011488 PURCHASE... | | C | -$35.00 | $200.12 |
| 05/23/2008 | CHECKCARD 0520 TOBACCO ROAD MIAMI FL 24019... | | C | -$43.40 | $235.12 |
| 05/23/2008 | DADE COUNTY FC 05/23 #000002751 WITHDRWL... | | C | -$62.95 | $278.52 |
| 05/22/2008 | eBay Inc. DES:PAYMENTS ID:5237A9806A5 INDN... | | C | -$2.42 | $361.47 |
| 05/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 05-... | | C | -$35.00 | $363.89 |
| 05/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 05-... | | C | -$35.00 | $398.89 |
| 05/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 05-... | | C | -$35.00 | $433.89 |
| 05/22/2008 | FL TLR transfer Bankin g Ctr BRICKELL #00 | | C | $550.00 | $468.89 |
| | Statement Period as of 05/22/2008 | | | | |
| 05/21/2008 | CHECKCARD 0517 BBS SPORTS BAR AND GRIL... | | C | -$8.00 | -$81.11 |
| 05/21/2008 | CHECKCARD 0517 BBS SPORTS BAR AND GRIL... | | C | -$13.00 | -$73.11 |
| 05/21/2008 | CitiFinancial Bill Payment | | C | -$256.00 | -$60.11 |
| 05/20/2008 | CHECKCARD 0518 FARM STORES NO.304 305-4... | | C | -$5.87 | $195.89 |
| 05/19/2008 | TROPICAL SUPER 05/16 #000364183 PURCHASE... | | C | -$15.81 | $201.76 |
| 05/19/2008 | WINN DIXIE 112 05/16 #000548761 PURCHASE... | | C | -$33.46 | $217.57 |
| 05/19/2008 | BKOFAMERICA ATM 05/19 #00000396D WITHDRWL... | | C | -$50.00 | $251.03 |
| 05/19/2008 | PUBLIX 05/17 #00000259 9 WITHDRWL 14601 S ... | | C | -$80.00 | $301.03 |
| 05/19/2008 | CHECKCARD 0516 PF CHAN GS #9931 MIAMI BEAC... | | C | -$75.88 | $381.03 |
| 05/16/2008 | 7-ELEVEN 05/16 #000316 942 PURCHASE 7-ELEV... | | C | -$41.04 | $436.91 |
| 05/16/2008 | First National Bank Of Marin Bill Payment | | C | -$50.00 | $477.95 |
| 05/16/2008 | Capital One Credit Cards Bill Payment | | C | -$50.00 | $527.95 |
| 05/16/2008 | Capital One Credit Cards Bill Payment | | C | -$50.00 | $577.95 |
| 05/16/2008 | BKOFAMERICA ATM 05/16 #000002097 WITHDRWL... | | C | -$70.00 | $627.95 |
| 05/16/2008 | Chase Card Services | | | -$100.00 | $697.95 |

Bank of America | Online Banking | Account Details | Transaction Register Print

| | | | | |
|---|---|---|---|---|
| | Bill Payment | | | |
| 05/16/2008 | Florida Power and Light Bill Payment | | -$175.00 | $797.95 |
| 05/16/2008 | Ameri-Credit Bill Payment | | -$367.00 | $972.95 |
| 05/15/2008 | CHECKCARD 0513 GRAND VIEW CHINESE REST M... | | -$17.00 | $1,339.95 |

[1](includes amounts subject to any holds.)

[2](helps you plan your finances by tracking upcoming payments and deposits.)

Bank of America | Online Banking | Account Details | Transaction Register Print          Page 1 of 3



# Bank of America

# Online Banking

## MyAccess Checking - 4084: Account Activity

### Balance Summary

**-$133.26**
Available Balance
as of 08/12/2008

**View:**   June 2008

**All transactions:**

| Date ↓ | Record | Type | Status | Amount | Balance |
|---|---|---|---|---|---|
| 06/30/2008 | CHECKCARD 0626 CVSPHAR MACY #0580 Q03 MIAM... | | C | -$3.76 | $70.21 |
| 06/30/2008 | SOU BLOCKBUSTE 06/29 #000591352 PURCHASE... | | C | -$4.92 | $73.97 |
| 06/30/2008 | WESTAR-97/40ST 06/29 #000728926 PURCHASE... | | C | -$8.54 | $78.89 |
| 06/30/2008 | CHECKCARD 0626 DENNY'S INC MIAMI FL 244273... | | C | -$34.72 | $87.43 |
| 06/30/2008 | EXXONMOBIL POS 06/28 #000693582 PURCHASE... | | C | -$35.04 | $122.15 |
| 06/30/2008 | CHECKCARD 0627 MIAMI DADE LIQUORS MIAMI ... | | C | -$38.14 | $157.19 |
| 06/30/2008 | PUBLIX 06/28 #00000663 6 WITHDRWL 1500 S D... | | C | -$40.00 | $195.33 |
| 06/30/2008 | CHECHOS PUB BI 06/28 #000719034 PURCHASE... | | C | -$40.13 | $235.33 |
| 06/30/2008 | CHECKCARD 0626 KGB CLEANERS CORAL GABL... | | C | -$104.02 | $275.46 |
| 06/27/2008 | CVS 0580 4800 06/27 #000353064 PURCHASE... | | C | -$15.49 | $379.48 |
| 06/27/2008 | WINN DIXIE 112 06/26 #000530443 PURCHASE... | | C | -$46.96 | $394.97 |
| 06/27/2008 | BKOFAMERICA ATM 06/27 #000007773 WITHDRWL... | | C | -$60.00 | $441.93 |
| 06/27/2008 | Ameri-Credit Bill Payment | | C | -$367.00 | $501.93 |
| 06/26/2008 | BKOFAMERICA ATM 06/26 #000003084 WITHDRWL... | | C | -$100.00 | $868.93 |
| 06/26/2008 | ALTERS BOLDT BRO DES:P AYROLL ID:274846000... | | C | $1,170.36 | $968.93 |
| 06/24/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 06-... | | C | -$35.00 | -$201.43 |
| 06/24/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 06-... | | C | -$35.00 | -$166.43 |
| 06/24/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 06-... | | C | -$35.00 | -$131.43 |
| 06/24/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 06-... | | C | -$35.00 | -$96.43 |

| Date | Description | | | Amount | Balance |
|------|-------------|--|--|--------|---------|
| 06/24/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 06-... | | C | -$35.00 | -$61.43 |
| 06/23/2008 | BIRD ROAD OFFI 06/21 #000737139 WITHDRWL... | | C | -$2.00 | -$26.43 |
| 06/23/2008 | WESTAR-97/40ST 06/22 #000939290 PURCHASE... | | C | -$5.02 | -$24.43 |
| 06/23/2008 | CHECKCARD 0620 DIANA'S CAFE MIAMI FL 24765... | | C | -$5.55 | -$19.41 |
| 06/23/2008 | CHECKCARD 0620 BURGER KING #14091 Q07 MIA... | | C | -$5.73 | -$13.86 |
| 06/23/2008 | CHECKCARD 0621 CHEVRON 00308755 MIAMI FL 2... | | C | -$6.78 | -$8.13 |
| 06/23/2008 | BKOFAMERICA ATM 06/23 #000001981 WITHDRWL... | | C | -$20.00 | -$1.35 |
| 06/23/2008 | WESTAR-97/40ST 06/21 #000755786 PURCHASE... | | C | -$25.00 | $18.65 |
| 06/23/2008 | PUBLIX 06/21 #00000156 5 PURCHASE 311 S W ... | | C | -$42.19 | $43.65 |
| 06/23/2008 | CHECKCARD 0621 TRANSIT LOUNGE MIAMI FL 248... | | C | -$54.75 | $85.84 |
| 06/23/2008 | BIRD ROAD OFFI 06/21 #000737139 WITHDRWL... | | C | -$63.00 | $140.59 |
| 06/23/2008 | CHECKCARD 0621 SEGAFRE DO ZANETTI ESPRE MI... | | C | -$68.09 | $203.59 |
| 06/23/2008 | CHECKCARD 0620 TRANSIT LOUNGE MIAMI FL 248... | | C | -$89.00 | $272.68 |

Statement Period as of 06/21/2008

| Date | Description | | | Amount | Balance |
|------|-------------|--|--|--------|---------|
| 06/20/2008 | U S CENTURY BA 06/20 #000238667 WITHDRWL... | | C | -$2.00 | $361.68 |
| 06/20/2008 | CHECKCARD 0618 WENDYS #9322 Q25 MIAMI FL ... | | C | -$6.94 | $363.68 |
| 06/20/2008 | EXXONMOBIL POS 06/20 #000984596 PURCHASE... | | C | -$35.02 | $370.62 |
| 06/20/2008 | CHECKCARD 0618 TRANSIT LOUNGE MIAMI FL 248... | | C | -$47.00 | $405.64 |
| 06/20/2008 | PAYPAL DES:INST XFER ID:5CH223AQTVF8S IN... | | C | -$83.00 | $452.64 |
| 06/20/2008 | U S CENTURY BA 06/20 #000238667 WITHDRWL... | | C | -$102.00 | $535.64 |
| 06/20/2008 | Check 511: Edit Details | | C | -$243.04 | $637.64 |
| 06/19/2008 | BANK OF MIAMI 06/18 #000000943 WITHDRWL... | | C | -$2.00 | $880.68 |
| 06/19/2008 | WESTAR 91/40 S 06/19 #000589976 PURCHASE... | | C | -$4.18 | $882.68 |
| 06/19/2008 | CHECKCARD 0618 LIQUOR DOWNTOWN 4 MIAMI FL... | | C | -$12.83 | $886.86 |
| 06/19/2008 | CHECKCARD 0617 GRAND VIEW CHINESE REST M... | | C | -$28.17 | $899.69 |
| 06/19/2008 | BANK OF MIAMI 06/18 #000000943 WITHDRWL... | | C | -$61.50 | $927.86 |
| 06/19/2008 | FL TLR transfer Bankin g Ctr BRICKELL #00 | | C | $700.00 | $989.36 |
| 06/18/2008 | VERIZON WRLS P 06/18 #000775939 PURCHASE... | | C | -$20.05 | $289.36 |
| 06/18/2008 | EXXONMOBIL POS 06/18 | | | -$30.02 | $309.41 |

Bank of America | Online Banking | Accounts | Account Details | Account Activity          Page 1 of 3

Sign Off

| | | New e-bills | Search | Locations | New mail | Help | En Español ▼ |

| Accounts | Bill Pay | Transfers | Investments | Customer Service |

Accounts Overview     Account Details     My Portfolio     Alerts     Open an Account

## MyAccess Checking - 4084

Account:  Select Account:          Go

### Balance Summary  ?

-$342.25  Available balance as of
08/20/2008

Account number:
Show account number

Turn off Popup Help

**No Fee Mortgage PLUS**

"It's so simple."
-Shelley S.

Learn more

### Customer Service

Stop mailing paper statements
Manage alerts

Show me more services...

| Account Activity | My Statements | Find Transactions |

### See how you spend your money with My Portfolio®.

Quick Find          Find

→ View all your accounts in one place - from Bank of America and elsewhere
→ Track how and where you're spending your money with easy-to-read graphs
→ Create a budget online to save for bigger purchases or a rainy day

Just click the My Portfolio tab above to get started.

Hide this message

Go to: Today (Aug 20, 2008)  ▼          Newest · Next · Previous · Oldest

Transactions  ?          Print · Download

| Date ↑ | Description | Type ▼ | Status ▼ | Amount | Balance |
|---|---|---|---|---|---|
| ▶ 08/13/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 08-... | 🏛 | C | -$35.00 | -$342.25 |
| ▶ 08/12/2008 | CHECKCARD 0808 PRONTOWASH SOUTH MIAMI FL ... | 💳 | C | -$29.00 | -$307.25 |
| ▶ 08/12/2008 | CHECKCARD 0811 FLORIDA POWER & LIGHT C 800... | 💳 | C | -$334.81 | -$278.25 |
| ▶ 08/12/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 08-... | 🏛 | C | -$35.00 | $56.56 |
| ▶ 08/12/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 08-... | 🏛 | C | -$35.00 | $91.56 |
| ▶ 08/12/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 08-... | 🏛 | C | -$35.00 | $126.56 |
| ▶ 08/12/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 08-... | 🏛 | C | -$35.00 | $161.56 |
| ▶ 08/12/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 08-... | 🏛 | C | -$35.00 | $196.56 |
| ▶ 08/11/2008 | CHECKCARD 0807 AMERIKA GAS 54/N.E 2ND MIAM... | 💳 | C | -$12.13 | $231.56 |
| ▶ 08/11/2008 | MCDONALD'S F11 08/09 #000872295 PURCHASE... | 💳 | C | -$14.23 | $243.69 |
| ▶ 08/11/2008 | CVS 5924 8765 08/09 #000358025 PURCHASE... | 💳 | C | -$16.04 | $257.92 |
| ▶ 08/11/2008 | PUBLIX 08/09 #00000173 3 PURCHASE 9105 S D... | 💳 | C | -$16.71 | $273.96 |
| ▶ 08/11/2008 | CVS 5924 8765 08/09 #000339160 PURCHASE... | 💳 | C | -$23.55 | $290.67 |
| ▶ 08/11/2008 | CHECKCARD 0808 CHEESEBRGR IN PRDS8003 S M... | 💳 | C | -$44.00 | $314.22 |
| ▶ 08/11/2008 | CHECKCARD 0808 KARMA CARWASH AND CAFE MI... | 💳 | C | -$100.00 | $358.22 |
| ▶ 08/11/2008 | PUBLIX 08/09 #00000455 3 WITHDRWL 1500 S D... | 🏧 | C | -$100.00 | $458.22 |
| ▶ 08/08/2008 | CHECKCARD 0807 BELLANT E'S PIZZA&PASTA MIA... | 💳 | C | -$16.08 | $558.22 |
| ▶ 08/08/2008 | SOU ROSS STORE 08/07 #000224896 PURCHASE... | 💳 | C | -$35.00 | $574.30 |
| ▶ 08/08/2008 | TARGET T1039 M 08/07 #000578885 PURCHASE... | 💳 | C | -$36.36 | $605.30 |
| ▶ 08/08/2008 | QUICK TIRES 08/08 #000 | | | | |

| Date | Description | | | Amount | Balance |
|---|---|---|---|---|---|
| | 803024 PURCHASE QUI... | | c | -$39.89 | $645.66 |
| ▶ 08/07/2008 | 18545460 08/07 #000594 469 PURCHASE GROVE ... | | c | -$3.75 | $685.55 |
| ▶ 08/07/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | c | -$460.50 | $689.30 |
| ▶ 08/07/2008 | ALTERS BOLDT BRO DES:P AYROLL ID:279090000... | | c | $1,149.04 | $1,149.80 |
| ▶ 08/04/2008 | WESTAR - 97/40 08/02 #000958624 PURCHASE... | | c | -$20.00 | $0.76 |
| ▶ 08/04/2008 | PUBLIX 08/03 #00000125 1 PURCHASE 9105 S D... | | c | -$41.71 | $20.76 |
| ▶ 08/04/2008 | CHECKCARD 0801 CASA PACO RESTAURANT MIA... | | c | -$46.66 | $62.47 |
| ▶ 08/01/2008 | BKOFAMERICA ATM 08/01 #000008997 WITHDRWL... | | c | -$80.00 | $112.15 |
| ▶ 07/31/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | c | -$200.00 | $192.15 |
| ▶ 07/31/2008 | FL TLR transfer Bankin g Ctr BRICKELL #00 | | c | $350.00 | $392.15 |
| ▶ 07/30/2008 | CitiFinancial Bill Payment | | c | -$128.00 | $42.15 |
| ▶ 07/30/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | c | -$60.00 | $170.15 |
| ▶ 07/29/2008 | PayPal DES:PPAL EPAY ID:82805327 INDN: 6... | | c | -$30.00 | $230.15 |
| ▶ 07/28/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | c | -$80.00 | $260.15 |
| ▶ 07/25/2008 | Florida Power and Light Bill Payment | | c | -$100.00 | $340.15 |
| ▶ 07/25/2008 | Ameri-Credit Bill Payment | | c | -$367.00 | $440.15 |
| ▶ 07/25/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | c | -$70.00 | $807.15 |
| ▶ 07/24/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | c | -$60.00 | $877.15 |
| ▶ 07/24/2008 | FL TLR cash withdrawal from CHK 4084 Banki... | | c | -$140.00 | $937.15 |
| ▶ 07/24/2008 | ALTERS BOLDT BRO DES:P AYROLL ID:277921000... | | c | $1,148.40 | $1,077.15 |
| | Statement Period as of 07/24/2008 | | | | |
| ▶ 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | c | -$35.00 | -$71.25 |
| ▶ 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | c | -$35.00 | -$36.25 |
| ▶ 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | c | -$35.00 | -$1.25 |
| ▶ 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | c | -$35.00 | $33.75 |
| ▶ 07/22/2008 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-... | | c | -$35.00 | $68.75 |
| ▶ 07/22/2008 | Counter Credit | | c | $175.00 | $103.75 |
| ▶ 07/21/2008 | RED BIRD CITGO 07/18 #000119523 PURCHASE... | | c | -$3.84 | -$71.25 |
| ▶ 07/21/2008 | CHECKCARD 0717 BURGER KING #25 Q07 MIAMI ... | | c | -$4.49 | -$67.41 |
| ▶ 07/21/2008 | CHECKCARD 0718 17TH & DIXIE CITGO Q39 MIA... | | c | -$4.77 | -$62.92 |
| ▶ 07/21/2008 | CHECKCARD 0718 WENDYS #5720 Q25 MIAMI FL ... | | c | -$15.47 | -$58.15 |
| ▶ 07/21/2008 | WESTAR - 97/40 07/18 #000906127 PURCHASE... | | c | -$25.00 | -$42.68 |

Showing: All entries

Icon Legend

Print · Download

Go to: Today (Aug 20, 2008)     Newest · Next · Previous · Older

Bank of America | Online Banking | Accounts | Account Details | Account Activity

¹ Includes amounts subject to any holds. Learn more

🔒 Secure Area

Accounts · Bill Pay · Transfers · Investments · Customer Service
Privacy & Security · Search · Locations · Alerts · Mail · Help · Site Map · Sign Off

Bank of America, N.A. Member FDIC.  Equal Housing Lender 🏠
© 2008 Bank of America Corporation.. All rights reserved.

Investment products offered through Banc of America Investment Services, Inc.® ("BAI"), annuities offered
through BAI and its subsidiaries, and insurance products offered through Banc of America Insurance Services,
Inc.(doing business in New York as Banc of America Insurance Agency) ("BAIS"):

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
|---|---|---|
| Are Not Deposits | Are Not Insured by Any Federal Government Agency | Are Not a Condition to Any Banking Service or Activity |

Investing in securities involves risks, and there is always the potential of losing money when you
invest in securities.
Banc of America Investment Services, Inc. is a registered broker-dealer and member FINRA  and SIPC.Both BAI and BAIS
are licensed insurance agencies and nonbank subsidiaries of Banc of America, N.A.

# EXHIBIT 2

# Deposit Agreement and Disclosures

*Effective February 1, 2008*

*Arizona, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia and Washington D.C.*

**Bank of America**

bankofamerica.com

Bank of America, N.A. Member FDIC.

Applies to accounts opened in AR, AZ, CT, DE, FL, GA, IA, IL, KS, MA, MD, ME, MO, NC, NH, NJ, NM, NV, NY, OK, OR, PA, RI, SC, TN, TX, VA, and Washington D.C.

©2008 Bank of America Corporation
♻ Printed on recycled paper.

91-11-2000B (02/08)



42343

**Bank of America**

# Table of Contents

**Welcome to Bank of America** ................................**1**
How to Get Started ..................................................1
How to Access Your Account ...................................1

**The Agreement for Your Account** ...............**1**
Binding Contract ......................................................1
Changes to This Agreement .....................................2
Closing an Account ..................................................2
Governing Law ..........................................................2

**Glossary of Terms** .........................................**3**

**Information About You and Your Account** ...........**3**
Information You Give Us ...........................................3
Identification ............................................................3
Bank of America's Privacy Policy for Consumers.........4
Sharing Information with Affiliates............................4
Credit Reports and Other Inquiries ...........................4
Disclosing Information About You and Your Account ...........4
Recording and Monitoring Telephone Calls................4
Release of Information ..............................................5

**Account Ownership** ........................................**5**
General Terms About Account Ownership...................5
Joint Accounts ........................................................5
"Payable on Death" Accounts ...................................6
Business and Other Non-personal Accounts .............6
Transferring Ownership............................................6

**Checking and Savings Accounts** ...............**6**
Types of Accounts ...................................................6
Eligibility for Interest Checking ................................6
How We Calculate Interest on Interest-Bearing Checking
and Savings Accounts .............................................7
Combined Balance Service .......................................7
Limits on Withdrawals and Transfers from Savings Accounts....8

**Time Deposit or CD Account** ......................**8**
Types of CDs............................................................8
How We Calculate Interest on CDs ...........................8
Disbursing Interest .................................................9
CDs That Automatically Renew ................................9

CDs That Do Not Automatically Renew .....................9
Grace Period ...........................................................9
Deposits to a CD .....................................................10
Early Withdrawals ...................................................10
Closing or Redeeming a CD .....................................10

**Information About Fees and Charging Your
Account** .............................................................**10**

**Processing Deposits and Cashed Items**.............**11**
Cashing Items or Accepting Items for Deposit ...................11
Checks Lost in the Collection Process .....................12
Collection Items .....................................................12
Demand Drafts and Remotely Created Checks...................12
Deposit Delivery and Preparation ...........................12
Deposit Error Correction.........................................12
Encoding Deposits ..................................................13
Endorsing Checks ...................................................13
Identifying the Account for Your Deposit ..........................13
Overpayments and Reversals ..................................13
Returned Items .......................................................13
Substitute Checks ..................................................14
Third-Party Endorsements......................................14

**When Funds are Available for Withdrawal and
Deposit Holds** .................................................**14**
Your Ability to Withdraw Funds ...............................14
Longer Delays May Apply .........................................15
Special Rules for New Accounts ..............................15
Government, Official, and Other Special Types of Checks ....15
Cash Withdrawal Limitation ...................................16
Holds on Other Funds ............................................16
Wire Transfers from Business Accounts...................16

**Processing Withdrawals** ............................**16**
Cashing Checks for You ...........................................16
Cashing Your Checks for Others ..............................16
Check Printed with Legends or Restrictions ......................16
Collection Items ....................................................16
Check Stock and Ink ..............................................17
Converting Checks to Electronic Debits ..................17
Examining Checks ..................................................17
Items Resulting from Voluntary Disclosure........................17
Large Cash Withdrawals .........................................17
Paying Checks and Other Items ..............................18
Processing and Posting Orders ...............................18
Stale-Dated and Postdated Checks .........................18